OPINION OF THE COURT
Joseph J. Maltese, J.
The plaintiff claims that the defendants’ fence wasn’t a proper fence — that it was dangerous and improperly maintained and caused his injury. But what is a proper fence? What is its purpose? How should it be constructed? How strong must it be? These are some of the issues in this case.
Facts
On the afternoon of June 4, 1996, the plaintiff, Stephen Wedlock, a police officer, along with fellow officers, was pursuing a suspected drug dealer who had climbed and alighted from a fence surrounding a vacant lot owned by the defendants and continued to flee. Officer Wedlock and his partner attempted to follow the fleet-footed 150-pound suspect and proceeded to climb the fence at the same time about six feet apart from each other. Both officers weighed approximately 180 pounds. In addition, they were each carrying their sidearm and other police equipment to include a bulletproof vest.
Officer Wedlock was atop the fence while his partner was midway up the fence when it bent inwards causing the plaintiff to fall forward from the fence into the vacant lot onto his right palm and knee. Officer Wedlock arose without assistance and examined the fence from which he had fallen. He described the fence as an old rusty chain link fence which was approximately 30 feet wide and 7 feet in height, which was divided by poles. He observed that the center piece of the fence had bent forward while the side pieces were still standing. He also observed that the fence was supported by metal bars and pieces of wood tied together by metal wire which affixed to the chain link fence. The plaintiff later photographed the fence to show its condition, but at the trial, his attorney stated that the pictures were no longer available.
One of the property owners, Juan Troncoso, who was not in court, had testified earlier at a deposition that he had repaired the fence by reinforcing the wire over the years. He tied additional wire through the chain link and onto a metal pole and added a two-foot by four-foot piece of wood for added support in 1995.
*434 The fleet-footed suspect was later apprehended by other police officers.
Fences
A fence is “a structure serving as an enclosure, a barrier, or a boundary, usually made of posts or stakes joined together by boards, wire, or rails.”[1]
The Columbia Encyclopedia describes a fence as: “[short for defense], humanly erected barrier between two divisions of land, used to mark a legal or other boundary, to keep animals or people in or out, and sometimes as an ornament. In newly settled lands fences are usually made of materials at hand, e.g., stone, earth, or wood * * * Wooden fences may be built of boards, posts and rails, or pickets * * * Other fence materials are concrete, bricks, iron rails, woven wire, and barbed wire.”[2]
The purpose of a fence was answered by the famed Lincoln historian, Carl Sandburg, in his aptly named poem A Fence: “the workmen are beginning the fence. The palings are made of iron bars with steel points that can stab the life out of any man who falls on them. As a fence, it is a masterpiece, and will shut off the rabble and all vagabonds and hungry men and all wandering children looking for a place to play. Passing through the bars and over the steel points will go nothing except Death and the Rain and Tomorrow.”
Carl Sandburg somberly makes the point that the purpose of a fence is not to invite people to climb over it, but to keep people out and those who choose to trespass over it assume the risk of harm in climbing the fence. To hold that a landowner must maintain a fence so as to make it safe to climb over would encourage people to do so, and would defeat the very purpose of the fence. Moreover, an easily maneuverable fence might even invite other types of lawsuits for failure to adequately deter trespassers.[3]
Yet others, like the poet Robert Frost, lament about the uninviting purpose of fences and walls. In his poem Mending Wall, while repairing a common wall with his neighbor, he complains:
“Before I built a wall I’d ask to know what I was walling in or walling out,
*435 “And to whom I would like to give offence.
“Something there is that doesn’t love a wall, That wants it down.”
To which his neighbor sagely replies: “Good fences make good neighbors.”
Like Robert Frost’s neighbor, the City of New York directs that the “good neighbors” of New York erect a “good fence” around their vacant lots.[4]
Administrative Code of the City of New York § 27-232 defines a fence as a “structure.” Administrative Code § 26-235 further mandates that: “Any structure or part of a structure or premises that from any cause may at any time become dangerous or unsafe, structurally or as a fire hazard, or dangerous or detrimental to human life, health or morals, shall be taken down and removed or made safe and secure.”
This section basically codifies the common-law duties of property owners. The Administrative Code does not delineate the type of fence or the construction materials for a fence around a vacant lot as it does for fences with different purposes.[5]
Premises Liability
As a general rule in premises liability cases, the plaintiff must prove that the defendant property owners knew or should have known, by periodic inspections, that their property (fence) was a dangerous condition and that they wilfully or maliciously failed to guard against and correct it or warn that it was a dangerous condition. In addition, the plaintiff must also prove *436 that the failure to correct or warn against such dangerous condition was a substantial factor in causing injury to a reasonably foreseeable plaintiff. Implicit in the general rule is that property owners have actual or constructive notice or knowledge of a dangerous condition and then fail to correct it.
All persons, to include property owners, are charged with knowledge of the law. Hence, a violation of a State or Federal statute constitutes negligence per se and violation of a local ordinance or regulation, like the Administrative Code and Charter, is some evidence of negligence even if the property owner was never served with a “formal” violation, summons or other type of notice of such violation. However, plaintiffs must still prove that the violation was a substantial factor or proximate cause of their injury.
The Appellate Division, Second Department, has tempered the common-law negligence rule for property owners by adopting an “assumption of risk” defense to deny liability to fence climbers. In Koppel v Hebrew Academy (191 AD2d 415 [2d Dept 1993], lv denied 82 NY2d 652 [1993]), an infant plaintiff who was climbing upon a 10-foot cyclone fence surrounding the defendants’ property cut her hands on what plaintiffs alleged to be the very sharp ends of the top of the fence. The Court granted the defendants’ summary judgment motion and held that (at 416) “[t]o hold that a landowner must maintain a fence so as to make it safe to climb over would encourage people to do so, and would defeat the very purpose of the fence.”
Again in 1999 the Appellate Division, Second Department, reiterated the fence climber-assumption of risk rule in Stevenson v Flore Fence Corp. (262 AD2d 550 [2d Dept 1999]). In citing to Koppel (supra) the Appellate Division held that the trial court properly granted summary judgment to the defendants when an 11-year-old plaintiff fell to the ground and injured his arm while climbing over a temporary fence installed by the defendant.
Defectively Designed Fence
The Appellate Division, Third Department, addressed the improperly designed structure (fence) theory asserted by the plaintiff in Columbus v Smith & Mahoney (259 AD2d 857, 858 [3d Dept 1999]): “It is well settled that in order to prove negligence or malpractice in the design of a structure, the plaintiff must put forth expert testimony that the engineer or architect deviated from accepted industry standards (see, Interstate Cigar Co. v Dynaire Corp., 176 AD2d 699; Grace & Co. v *437 State Univ. Constr. Fund, 99 AD2d 860, 862 [Levine, J., dissenting in part and concurring in part], mod on dissenting/ concurring mem below 64 NY2d 709; see also, 530 E. 89 Corp. v Unger, 43 NY2d 776, 777).”
The plaintiffs did not present any evidence other than their own assertion that the fence was dangerous or structurally not fit for its intended purpose, which is to keep persons out of the vacant lot. In fact, the plaintiffs’ counsel stated that they never had the fence examined. In order for the plaintiffs to demonstrate that the design of the fence was “not up to code,” they needed expert testimony to prove it. No expert testimony whatsoever was presented to prove that the fence met or did not meet code requirements. The mere fact that it was repaired with wood and wire rather than replaced is insufficient evidence of dangerousness or improper repair. Moreover, it must be highlighted that the 150-pound criminal suspect climbed over the fence without it falling.
Police Officer’s Statutory Right to Sue Property Owners
In addition to common-law negligence, product liability or other statutory causes of action, the Legislature has extended to police officers an additional cause of action in negligence against other persons, like property owners, for injuries sustained in the course of their employment pursuant to General Municipal Law § 205-e (1) which provides: “[I]n the event any accident, causing injury * * * occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus, the person or persons guilty of said neglect, omission, willful or culpable negligence at the time of such injury * * * shall be liable to pay any officer * * * a sum of money, in case of injury to person, not less than one thousand dollars.”[6]
*438 General Municipal Law § 205-e is similar to the provisions of General Municipal Law § 205-a which governs firefighters. Under both sections the burden is upon firefighters or police officers to prove that their “ ‘injuries were practically and reasonably connected to a violation by the defendant’ of a statute or code.” (Williams v City of New York, 256 AD2d 332 [2d Dept 1998], lv denied 93 NY2d 804 [1999].) The plaintiff must also prove that the injury was caused by the negligence of the defendant. (Id.)
The Appellate Division, Second Department, has also held that: “[i]n an action based on General Municipal Law § 205-e, the pleadings must specify the statutes with which the defendant allegedly failed to comply, describe the manner in which the plaintiff’s injuries occurred, and set forth facts from which it may be inferred that the defendant’s negligence directly or indirectly caused the harm to the plaintiff” (Jackson v City of New York, 240 AD2d 708, 708-709 [2d Dept 1997J).[7]
*439 Notice of Defect
The special provisions afforded police officers under General Municipal Law § 205-e and firefighters under General Municipal Law § 205-a omit the necessity of first demonstrating actual or constructive notice of a defect or violation of Federal, State or local statutes or codes.
The Appellate Division, Second Department, in McCullagh v McJunkin (240 AD2d 713 [2d Dept 1997]), removed the notice requirement as a condition precedent to a firefighter’s right to sue under General Municipal Law § 205-a. The Appellate Division held that: “in an action pursuant to General Municipal Law § 205-a, it is not necessary for the plaintiff [firefighter] to prove such notice [of the violation] as would be required for recovery under a common-law theory of negligence, the statute still requires that the circumstances surrounding the violation indicate that the violation was ‘ “a result of [some] neglect, omission, willful or culpable negligence” on the defendant’s part’ (Lusenskas v Axelrod, [183 AD2d 244, 248 (1st Dept 1992)], citing General Municipal Law § 205-a).”
While the notice requirement is omitted for police officers suing under General Municipal Law § 205-e, like the firefighters suing under General Municipal Law § 205-a, police officers must still prove that the property owners neglected their property or wilfully created a hazard which proximately caused their injuries. The Appellate Division, First Department, has also omitted this notice requirement in Nelson v Donahue (248 AD2d 329 [1st Dept 1998]).
Discussion
A fence is not a walkway, nor is it a staircase, nor is it a ladder which should be made safe for those who venture to traverse it — a fence is different^ — it is a barrier. Hence, even foreseeable fence climbers, to include children, climb at their own peril, because the purpose of a fence is to keep people “out,” not to invite them in. Conversely, prison guards may view the purpose of a fence as a structure to keep people “in,” rather than to invite them out. Yet again, those escaping foreseeable fence climbers climb at their own peril.
While a fence is not a stairway with an invitation to climb it, it should be reasonably foreseeable to property owners that a trespasser may attempt to climb their fence. Therefore a fence *440 around a vacant lot should not be an intentional trap for those who venture over it — nor should it collapse at the touch. An issue considered here is whether it was reasonably foreseeable that two police officers, each weighing approximately 180 pounds, plus their police equipment, which collectively approached 400 pounds, would “hit the fence” to climb it at the same time within six feet of each other while chasing after a criminal suspect. Whether a chain link fence should be capable of supporting such weight and physical forces upon it was one of the questions considered by the court, but never answered by the plaintiffs.
The plaintiffs did not present any weight or strength standards for fences, which arguably would take into account the reasonably foreseeable event of someone climbing the fence without it collapsing. Absent any presentation of any written code or regulatory standards for fences to support up to 400 pounds of weight or any expert testimony as to standards in the building industry, the court is left with assessing “a reasonable person standard” to ascertain whether the property owners were negligent in maintaining their fence in a safe condition in accordance with various code sections and the common law.
Merely asserting that the defendant property owners violated Administrative Code § 27-232 or § 26-233 or other sections of the Administrative Code which require that structures (fences) be maintained in a safe condition, is not sufficient to hold the property owners liable under General Municipal Law § 205-e. The plaintiffs never demonstrated how the fence was improper, unsafe or a dangerous condition. The plaintiffs only presented the police officer at trial to prove their case. No other testimony, expert or otherwise, was presented — nor were any specific standards for fence strength or photos of the fence presented to this court.
While it is undisputed that the fence was old, it was apparently routinely maintained by the property owners who made repairs to it. Whether those repairs were adequate to keep the fence safe is an issue to be determined by a reasonable review of the facts. The criminal suspect scaled the fence without it falling. The fence was apparently freestanding before two police officers climbed it. Only when both officers “hit the fence” at the same time did it bend forward. This court finds that, absent any code standards, it is not reasonable for property owners to maintain a fence to withstand the force of two police officers jumping and climbing on it with gear approaching 400 *441 or more pounds. Therefore, the plaintiffs’ assertion that the fence was improper, unsafe or dangerous in violation of Administrative Code § 27-232 or § 26-233 or any other code section pleaded has not been established. Consequently, the plaintiffs have not established that any violation of a statute or code proximately caused the injuries pursuant to General Municipal Law § 205-e.
The Appellate Division, Second Department, asserted in Diven v Village of Hastings-On-Hudson (156 AD2d 538, 539 [2d Dept 1989]), “[w]hat accidents are reasonably foreseeable, and what preventive measures should reasonably be taken, are ordinarily questions of fact.”
While the plaintiff police officer did not establish a claim under General Municipal Law § 205-e, he still had a common-law negligence claim to pursue. Since the plaintiff has never established that the fence was a dangerous condition either in violation of a code, statute or otherwise, he also fails to prove the necessary elements of common-law negligence. The fact that he was injured while climbing the fence is not sufficient. He must prove that the dangerous condition proximately caused his injury.
Moreover, even in the “hot pursuit” of a criminal suspect, police officers still assume the risk of harm to themselves for their extraordinary actions taken while scaling walls and jumping over fences in their common-law negligence causes of action. Police officers are not immune from the defense of “assumption of the risk” or in comparative negligence for their own actions in common-law negligence suits. Only under a General Municipal § 205-e statutory action is there a form of absolute liability which omits assumption of the risk and comparative negligence defenses (Warner v Adelphi Univ., 240 AD2d 730 [2d Dept 1997]).
In the case before this court, the plaintiffs have not established by a preponderance of the credible evidence that the defendant property owners violated a code, regulation or statute which proximately caused the injury in accordance with the General Municipal Law § 205-e claim. Nor have the plaintiffs established that the defendants were negligent in maintaining their fence or that the fence was improper or dangerous or not fit for its intended purpose. Since the plaintiffs never proved the property owners breached their duty of care to foreseeable plaintiffs, this court never reached an assessment of whether there was any assumption of risk or comparative negligence on the part of the police officer in his common-law negligence ac *442 tion. Therefore, this court finds that the defendant property owners are not liable. Accordingly the plaintiffs’ causes of action for common-law negligence and the General Municipal Law § 205-e claim,are both dismissed without costs or disbursements.

. American Heritage Dictionary of English Language (3d ed 1996).

. Columbia Encyclopedia (6th ed, Columbia University Press 2000).

. See, e.g., Annotation, Duty of Landowner to Erect Fence or Other Device to Deter Trespassing Children from Entering Third Person’s Property on which Dangerous Condition Exists, 39 ALR2d 1452, 1455.

. New York City Charter, chapter 71, § 2904 (2) states: “The owner of any property at his own cost, shall * * * fence any vacant lot or lots comprising part or all of such property * * * whenever the transportation department shall so order pursuant to standards and policies of the transportation department and section 19-152 of the administrative code of the city of New York.” (See also, 34 RCNY 2-12 [a] [“Vacant Lots * * * Property owners’ responsibility. Whenever the Commissioner (Transportation-Highways) shall so order or direct, property owners shall at their own expense * * * (1) fence any vacant lot(s)”].)

. Administrative Code § 27-1027 (a) (if construction operation ceases or is interrupted a solid fence of at least eight feet is required); § 27-509 (In nonresidential districts fences may be a maximum of 10 feet. In residential districts “no fences, whether of masonry, steel, wood, or any other materials shall be erected” over six feet); § 27-297 (b) (fences not more than six feet can be made from wood or other combustible material); 1 RCNY 30-01 (a) (fences around automobile wreckage, scrap metal or paper, lumber or building supply facilities shall be enclosed “by a solid fence or wall, of suitable uniform material and color at least eight feet high”); 6 RCNY 2-52 (a) (fencing around a sidewalk café may be no more than 36 inches).

. General Municipal Law § 205-e was initially enacted by the Legislature in 1989 (L 1989, ch 346) to overrule the Court of Appeals decision in Santangelo v State of New York (71 NY2d 393 [1988]) which was a decision which would extend the “fireman’s rule” to police officers. The high Court held in Santangelo that, like firemen, police officers are trained and compensated to confront certain hazards to include negligence as part of their duties as public servants. Hence, they are aware of such potential hazards and, in essence, assume those risks when they take those jobs. Moreover, the Court found *438 that the State and municipalities under General Municipal Law article 10 and Retirement and Social Security Law article 8 provide for retirement and Social Security for police and firepersons injured in the course of their employment. The plaintiff in this case has availed himself of those benefits. The statute has been amended several times since its passage in 1989 (see, L 1990, ch 762; L 1992, ch 474; L 1994, ch 664; L 1996, ch 703). The successive amendments, for the most part, have been in response to restrictive judicial interpretations of the statute and varying factual circumstances. Each legislative enactment was promoted for the express purpose of clarifying and emphasizing the legislative intent that General Municipal Law § 205-e be applied “expansively” (see, L 1990, ch 762; L 1992, ch 474; L 1994, ch 664; L 1996, ch 703). On October 9, 1996 the Legislature enacted General Obligations Law § 11-106 (L 1996, ch 703) which abolished the common-law “fireman’s rule” prohibiting suits by firemen and policemen injured or killed in the line of duty which is “proximately caused by the neglect, willful omission, or intentional, willful or culpable conduct of any person” (General Obligations Law § 11-106 [1]) other than their employer or co-employee. (See, Gonzalez v Iocovello, 93 NY2d 539, 548 [1999].)

. The plaintiffs’ complaint in this action set forth only Administrative Code § 27-2010 (cleaning of roofs, yards, courts and other open spaces), § 27-2039 (lighting to be provided at night), § 27-127 (building maintenance requirements), § 27-128 (owner shall be responsible at all times for the safe maintenance of the building and its facilities), § 26-233 (owners of adjoining properties are responsible jointly for the proper maintenance and repair of partition fences and retaining walls dividing their properties), and § 26-235 (which involves removal or repair of structures which become dangerous). At trial the plaintiff requested that the court take judicial notice of the additional municipal codes: Administrative Code § 27-232 and “New York City Charter § 29-04.” The court granted the request, but neither of these sections was in the complaint. Administrative Code § 27-232 defines fences as structures, but chapter 29, § 4 of the New York City Charter dealt with the *439 oversight power of the City Council and is not relevant. In his posttrial memo, the site was corrected to chapter 71, § 2904 (discussed supra, n 4).